Salvatore A. Giampiccolo, Esq.
John N. Visconi, Esq.
Rita Portenti, Esq.
**STEVENS & LEE, PC**
669 River Drive, Suite 201
Elmwood Park, NJ 07407
Tel.: (201) 857-6767
Fax: (201) 371-7379

*Attorneys for Defendants,*
*Tilton Automotive, L.L.C. d/b/a*
*Schumacher Chevrolet of Denville*
*and Judith Schumacher-Tilton a/k/a*
*Judith A. Tilton*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDREW MALLON, on behalf of himself and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON; TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE; JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON, <br><br> Defendants. | Civil Action No. <br><br><br> **NOTICE OF REMOVAL OF ACTION FROM STATE COURT** |

To:    The United States District Court for the District of New Jersey

**PLEASE TAKE NOTICE** that defendants, Tilton Automotive, L.L.C. d/b/a Schumacher

Chevrolet of Denville ("Schumacher Denville") and Judith Schumacher-Tilton a/k/a Judith A.

Tilton ("Ms. Tilton")[1] (collectively referred to as "Schumacher Defendants"), through their

---

[1] Ms. Tilton, only in her capacity as the majority-owner of Schumacher Denville.

undersigned counsel hereby remove the above-captioned action from the Superior Court of New Jersey, Law Division, Morris County (the "Morris County Court"), bearing Docket No. MRS-L-000097-26, to the United States District Court for the District of New Jersey, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453.

**PLEASE TAKE FURTHER NOTICE** that in support of this removal petition (the "Notice of Removal"), Schumacher Defendants rely upon the following:

1.      On or about January 13, 2026, plaintiff, Andrew Mallon ("Plaintiff"), commenced this putative class action against Schumacher Defendants by filing a class action complaint ("Complaint" or "Compl.") in the Morris County Court.

2.      As more fully set out below, this case is properly removed to the United States District Court for the District of New Jersey because Schumacher Defendants have satisfied the procedural requirements for removal, pursuant to 28 U.S.C. §§ 1446 and 1453, and the District Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(d) and 1441(a).

## I.      SCHUMACHER DEFENDANTS HAVE MET THE PROCEDURAL REQUIREMENTS OF § 1446

4.      Copies of all process, pleadings, and orders served upon Schumacher Defendants in this action, as well as the affidavits of service, are attached hereto as **Exhibit A**, in satisfaction of 28 U.S.C. § 1446(a).

5.      Pursuant to 28 U.S.C. § 1446(b)(1), a notice of removal must be filed within 30 days after a defendant's receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action is based.

6.      The Complaint was served upon Schumacher Defendants on January 14, 2026, as confirmed by Plaintiff's affidavits of service. (*See* Exhibit A). Accordingly, this instant Notice of Removal is timely under 28 U.S.C. § 1446(b)(1) because it has been filed within thirty (30) days

of January 14, 2026. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999).

7.      After filing this Notice of Removal, Schumacher Defendants will promptly serve a copy of the Notice of Removal upon counsel for Plaintiff and will file a copy with the Clerk of the Morris County Court, thereby effecting removal pursuant to 28 U.S.C. § 1446(d).

8.      Because this action is a putative class action, it may be removed by any defendant without the consent of all defendants, in accordance with 28 U.S.C. § 1453(b). Although consent is not required, all defendants to this action nonetheless consent to its removal to this Court.

9.      No previous application has been made for the relief requested herein.

## II.     THIS COURT HAS ORIGINAL JURISDICTION PURSUANT TO §§ 1441(a), 1332(d), AND 1453(b)

10.      Pursuant to 28 U.S.C. § 1441(a), any civil action brought in a state court of which the district courts of the United States have original jurisdiction may be removed to the district court of the district and division embracing the place where such action is pending, unless otherwise expressly provided by an act of Congress.

11.      28 U.S.C. § 1453(b) authorizes the removal of class actions, as defined in 28 U.S.C. § 1332(d)(1), to federal district court.

### A.      This Court Has Original Jurisdiction Over Putative Class Actions

12.      Removal of this putative class action is proper pursuant to the Class Action Fairness Act of 2005 ("CAFA"). Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C. including § 1332).

13.      This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2), (5), and (6), which establish jurisdiction over putative class actions in which the proposed class

includes at least 100 members, any member of the alleged plaintiff's class is a citizen of a state different from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest or costs.

14.    As set forth below, this action is a putative class action in which: (1) there are 100 or more members in Plaintiff's proposed class; (2) any member of Plaintiff's proposed class is a citizen of a state different from any defendant; and (3) the claims of the proposed class members exceed the sum or value of $5,000,000 in the aggregate. Thus, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

### i.    The Putative Class Action Consists of More Than 100 Members

15.    In the Complaint, Plaintiff purports to represent:

> "[a]ll natural persons who purchased or leased a vehicle from Defendants at any time on or after the day six years prior to the date this Complaint was originally filed, who were charged for a documentary fee where the VBO used in the transaction did not itemize the specific documentary service(s) provided or the fee(s) for each documentary service provided.
>
> Specifically excluded from the Class are the owners, officers, directors, employees, affiliates, parents, subsidiaries, heirs, successors and assigns of Defendants, whether natural persons or entities. Also excluded from the class is any judge or magistrate involved in this matter."

(Ex. A, Compl. ¶ 59).

16.    Plaintiff asserts that "[t]he Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable. The proposed Class consists of hundreds or thousands of customers." (*Id.* ¶¶ 60-61).

17.    Indeed, Schumacher Denville sold approximately 4,708 vehicles or more in the past six (6) years. (*See* Declaration of Stephen Tilton dated February 12, 2026 ("Tilton Decl."), ¶ 15).

4

### ii.    Diversity of Citizenship Exists

18.    CAFA expands federal diversity jurisdiction over class actions. *See* 28 U.S.C. § 1332 (d)(2). As stated in *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1193-94 (11th Cir. 2007):

> Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel. CAFA § 2, 119 Stat. at 5. CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications. CAFA § 2, 119 Stat. at 5; *see also Miedema,* 450 F.3d at 1329 ('[T]he text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal[.]').
>
> **CAFA amends the federal diversity jurisdiction statute, 28 U.S.C. § 1332, by inserting a new subsection, § 1332(d). This new subsection works a sea change in diversity jurisdiction for certain class actions. It broadens diversity jurisdiction by establishing lower threshold requirements for jurisdiction and abrogating long-established precedent.**

*Id.* (emphasis added).

19.    Plaintiff alleges to reside in Detroit, Michigan. (Ex. A, Compl. ¶ 4). In his transaction with Schumacher Boonton for the purchase of the subject vehicle, Plaintiff provided Schumacher Boonton with a Michigan driver's license. (*See* Tilton Decl. ¶ 14). In addition, Plaintiff alleged that he registered his vehicle in Michigan. (Ex. A, Compl. ¶ 42). The state in which a person resides, as well as the state in which a driver's license is obtained and the state in which a vehicle is registered are all factors considered in establishing an individual's domicile. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d. Cir. 2006). Accordingly, Plaintiff is a citizen of Michigan because he resides in Michigan, has a Michigan driver's license, and registered his vehicle in Michigan. (Ex. A, Compl. ¶ 4, 42; Tilton Decl. ¶ 14).

20.    Ms. Tilton is a citizen of New Jersey, where she is domiciled. (*See id.* ¶ 3).

21.    Tilton Automotive, L.L.C. is a limited liability company registered in New Jersey, with a principal place of business at 281 Route 46 East, Denville, NJ 07834. (*See* Tilton Decl. ¶ 8). Its members, Ms. Tilton and Stephen Tilton, are domiciled in New Jersey. (*See id*. ¶¶ 2-3). Thus, both Tilton Automotive, L.L.C. and its members are citizens of New Jersey pursuant to 28 U.S.C. §1332(c).

22.    Here, diversity exists between the parties because Plaintiff is a citizen of Michigan and Schumacher Defendants are citizens of New Jersey. Thus, any member of the class is a citizen of a state different from any defendant.

23.    Moreover, as defined, the putative class is not limited to New Jersey citizens but instead includes individuals who are citizens of other states. Accordingly, minimal diversity exists between the parties.

### iii.    The Amount-In-Controversy Requirement Is Satisfied

24.    Plaintiff claims that Schumacher Denville charged an unlawful documentary service fee on the Vehicle Buyer's Order ("VBO") by failing to itemize the specific documentary service(s) provided or the fee(s) for each documentary service provided. (Ex. A, Compl. ¶ 59).

25.    Plaintiff alleges three separate claims on behalf of the class and himself, comprising of the following: (1) violations of the New Jersey Consumer Fraud Act ("CFA") and New Jersey Automotive Sales Practices Regulations ("ASP"); (2) violations of the New Jersey Truth-in-Consumer Contract, Warranty and Notice Act ("TCCWNA"); (3) violations of the Uniform Declaratory Judgments Law ("UDJL"); and asserts two additional claims as to himself only, including: (4) violations of the CFA, the New Jersey Uniform Commercial Code ("UCC"), the ASP, and the New Jersey Motor Vehicle Certificate of Ownership Law. Based on these allegations, Plaintiff seeks several forms of relief, including, but not limited to, the following: declaratory

judgment, injunctive relief, actual damages, treble damages under the CFA, statutory penalties under the TCCWNA, interest, and attorneys' fees and costs. (*Id.*, pp. 7-15).

26.     The claims of the individual class members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Under this aggregated standard, Plaintiff's claim manifestly meets the jurisdictional threshold.

27.     The documentary service fee charges that are the subject of the Complaint ranged from $299 to $399 per sale and formed part of the transactions of vehicles sold throughout various states. (*See* Tilton Decl. ¶ 15). For the past six (6) years, the asserted damage exposure period, Schumacher Denville's vehicle sales involving similarly situated documentary service fees on the VBO totaled approximately 4,708 transactions. (*See id.*).

28.     Plaintiff seeks treble damages, reasonable attorney's fees and costs, and reimbursement of all of the documentary service fees derived from those vehicle transactions during the six-year period. In similar putative class action matters, attorneys have been awarded thousands of dollars for such fees and costs, with some awards in the hundreds of thousands range. *See Chen v. Northeast Motor Cars, Inc.*, No. A-4641-19, 2021 WL 4534071, *4 (App. Div. Oct. 5, 2021); *Seigelstein v. Shrewsbury Motors, Inc.*, 464 N.J. Super. 393, 398, 236 A.3d 1004, 1007 (App. Div. 2020); *Gambrell v. Hess Corp., Inc.*, No. A-4001-15T3, 2017 WL 2375700, at *2 (N.J. Super. Ct. App. Div. June 1, 2017).

29.     The value of all such relief demanded (i.e., the amount in controversy, trebled under CAFA, combined with attorneys' fees and the economic consequences of economic relief) can reasonably be expected to exceed $5,000,000, exclusive of interest and costs. *See Frederico v. Home Depot*, 507 F.3d 188, 197-99 (3d Cir. 2007); *Smith v. HSN, Inc.*, No. 20-cv-12869-JXN-

ESK, 2021 WL 9315794, *3 (D.N.J. Oct. 12, 2021); *Alegre v. Atl. Cent. Logistics*, No. 15–2342 (SRC), 2015 WL 4607196, *6 (D.N.J. July 31, 2015).

30.     Finally, CAFA's legislative history sets forth that doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *See, e.g.*, S.REP. 109-14 at 43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant."), *Id.* at 35 (the intent of CAFA "is to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications"), *Id.* at 27 ("the Committee believes that the federal courts are the appropriate forum to decide most interstate class actions because these cases usually involve large amounts of money and many plaintiffs, and have significant implications for interstate commerce and national policy.").

**B.     This District Court Embraces the Place Where Such Action Is Pending**

31.     The Morris County Court is located within the District of New Jersey. Therefore, venue is proper within the District of New Jersey pursuant to 28 U.S.C. § 1441(a) because said district is the district and division embracing the place where such action is pending.

WHEREFORE, Schumacher Defendants respectfully remove this action from the Morris

8

County Court to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1441(a).

Dated: February 13, 2026

By:  */s/ Salvatore A. Giampiccolo*
Salvatore A. Giampiccolo, Esq.
John N. Visconi, Esq.
Rita Portenti, Esq.
**STEVENS & LEE, PC**
669 River Drive, Suite 201
Elmwood Park, NJ 07407
Tel.: (201) 857-6767
Fax: (201) 371-7379


*Attorneys for Defendants,*
*Tilton Automotive, L.L.C. d/b/a*
*Schumacher Chevrolet of Denville*
*and Judith Schumacher-Tilton a/k/a*
*Judith A. Tilton*

9

Salvatore A. Giampiccolo, Esq.
John N. Visconi, Esq.
Rita Portenti, Esq.
**STEVENS & LEE, PC**
669 River Drive, Suite 201
Elmwood Park, NJ 07407
Tel.: (201) 857-6767
Fax: (201) 371-7379

*Attorneys for Defendants,*
*Tilton Automotive, L.L.C. d/b/a*
*Schumacher Chevrolet of Denville*
*and Judith Schumacher-Tilton a/k/a*
*Judith A. Tilton*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW MALLON, on behalf of himself and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON; TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE; JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY, LAW DIVISION - MORRIS COUNTY <br><br> Civil Action No. <br><br><br> **DECLARATION OF STEPHEN TILTON** |

I, Stephen Tilton, hereby certify and declare under penalty of perjury pursuant to section 1746 of Title 28 of the United States Code, that the following is true and correct:

1

1. I am the Chief Financial Officer of defendant TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE ("Schumacher Denville") and have personal knowledge of the facts set forth herein.

2. I am a citizen of New Jersey.

3. Defendant Judith Schumacher-Tilton a/k/a Judith A. Tilton ("Ms. Tilton"), a member of Schumacher Denville, is a citizen of New Jersey.

4. Among my duties on behalf of Schumacher Denville is reviewing, collecting, and forwarding to our company's attorney legal notices including, but not limited to, attorney correspondence, complaints, and arbitration demands. I have reviewed the removal petition (the "Notice of Removal") and the attachments thereto.

5. On or about January 13, 2026, plaintiff, Andrew Mallon ("Plaintiff"), commenced this putative class action by filing a class action complaint ("Complaint" or "Compl.") in the Morris County Court, bearing Docket No. MRS-L-000097-26.

6. Annexed to the Notice of Removal as **Exhibit A** are true and accurate copies of all process, pleadings, and orders filed in this action, including the Complaint.

7. As confirmed by Plaintiff's affidavits of service, Schumacher Defendants were served on January 14, 2026. (*See* Exhibit A).

8. Schumacher Denville is a New Jersey limited liability company with its principal place of business located at 281 Route 46 East, Denville, New Jersey 07834.

9. Schumacher Denville is engaged in the sale and service of motor vehicles.

10. Schumacher Denville utilized an identical motor vehicle retail order (the "MVRO") for every vehicle sold in the past six (6) years (i.e., the class period). Attached hereto as **Exhibit 1** is a true and accurate redacted copy of the MVRO.

2

11. This MVRO was provided to every consumer and contained a waiver of the right to pursue a class action in court and in arbitration. (*See* Exhibit 1). In addition, the MVRO contained an agreement by the consumer to arbitrate all other claims.

12. Based upon information collected and reviewed, and based upon Plaintiff's allegations in the Complaint, Plaintiff did not purchase the subject vehicle from Schumacher Denville or conduct any other transaction with Schumacher Denville during the purported class period.

13. Plaintiff purchased the subject vehicle from Dalessio Auto Group Inc. d/b/a Schumacher Chevrolet Buick of Boonton ("Schumacher Boonton"). (*See* Compl. ¶ 32).

14. Schumacher Boonton provided me with a copy of Plaintiff's Michigan state driver's license, a true and accurate redacted copy of which is attached hereto as **Exhibit 2**.

15. Based upon information collected and reviewed, Schumacher Denville sold approximately 4,708 vehicles or more during the past six (6) years and charged a range of $299 to $399 for the documentary service fees in connection with the transactions.

16. Based upon information collected and reviewed, along with my review of the claims asserted in the Complaint, the aggregate value of the claims of the individual putative class members exceeds the sum of $5,000,000.

Executed on February 13, 2026

_____

Stephen Tilton

3

# EXHIBIT 1

**Motor Vehicle Retail Order**

☒ New  ☐ Used  ☐ Demo  ☐ Certified

Tilton Automotive LLC d/b/a

## SCHUMACHER
### CHEVROLET OF DENVILLE
"Come Join The Family"
www.SchumacherChevroletDenville.com

281 Route 46 East
P.O. Box 1265
Denville, NJ 07834
Tel. (973) 627-0900
Fax (973) 627-2141

DATE ▮
DEAL NO. ▮
STOCK NO. ▮
SALES PERSON ▮

CUSTOMER ▮

ADDRESS ▮
Street / City / State / ZIP

WORK # ▮
HOME # ▮  CELL # ▮  EMAIL ▮

YEAR & MAKE ▮  MODEL ▮

BODY TYPE ▮  COLOR ▮  SERIAL NO. ▮

INT. TRIM COLOR ▮  MILES ▮

INS. CO. ▮  POLICY # ▮
AGENT ▮  AGENCY ▮
PHONE ▮  FAX ▮

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
* Cash Purchase    * Finance Purchase    * Lease

IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE PART OF THIS ORDER. IF A LEASE, COMPLETE DISCLOSURE OF ALL LEASE TERMS AND CONDITIONS IS CONTAINED ON A SEPARATE LEASE CONTRACT.

TO BE DELIVERED ON OR ABOUT ▮

| | |
|---|---|
| Price of Unit | ▮ |
| Additional Equipment (optional) | |
| ▮ | ▮ |
| ▮ | ▮ |
| ▮ | ▮ |
| ▮ | ▮ |
| ▮ | ▮ |

IF A NEW VEHICLE SALE OR LEASE. . .
The only warranties applying to this vehicle are those offered by the manufacturer. Dealer sells/leases this vehicle "as is" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks. The manufacturer's warranty is not affected by this disclaimer of warranties by dealer.

IF USED VEHICLE SALE OR LEASE-CHECK APPROPRIATE BOX
☐ This vehicle is sold/leased "as is" and the dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon dealer's negligence, or otherwise), is expressly excluded and customer hereby assumes any such risks.
OR
☐ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

ALL USED VEHICLE SALES DEALER'S OBLIGATION
The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price (if a sale) to the customer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the customer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the issuance of the permanent registration for such vehicle.

___/___/___  X_____
Date           Customer's Signature

Lease Payment Subject to Prevailing Rates & Residuals at Time of Delivery OK √ ▮
Customer Initial

### IF A LEASE, THE FOLLOWING APPLY:
MONTHLY PAYMENT: ▮ # MONTHS ▮
MILEAGE PER YEAR ▮
CASH DUE AT DELIVERY $ ▮

### IF A PURCHASE, THE FOLLOWING APPLY:

| | | |
|---|---|---|
| TOTAL PRICE OF VEHICLE | | ▮ |
| Less Trade-in | | ▮ |
| Documentary Fee: Clerical Fee $288.00 / Administrative Fee $65.00 / Document Delivery Fee $46.00 (See Paragraph 16 On Terms & Conditions Page) | $399 | 00 |
| TOTAL TAXABLE AMOUNT | | ▮ |
| State Sales Tax | | ▮ |
| Motor Vehicle Tire Fee - $1.50 per New Tire | | ▮ |
| N.J. Supplemental Titling Fee | | ▮ |
| Registration/Title Fee (Estimated) (See Paragraph 15 On Terms & Conditions Page) | | ▮ |
| NET PAY-OFF ON TRADE-IN | | ▮ |
| TOTAL | | ▮ |
| Deposit | | ▮ |
| Factory Rebate ▮ | | ▮ |
| Factory Rebate ▮ | | ▮ |
| Factory Rebate | | ▮ |
| Factory Rebate | | ▮ |

**BALANCE IN CASH OR CERTIFIED CHECK DUE ON DELIVERY.** ▮

WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)
The undersigned, has read and understood the above Dealer's Obligation, and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION to make repairs without charge or return the full purchase price if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (P.L. 1995, Chpt. 373).

___/___/___  X_____
Date           Customer's Signature

### TRADE-IN DESCRIPTION AND ALLOWANCE

| | |
|---|---|
| Year: ▮ | Trade-In Value: ▮ |
| Make: ▮ | Less Balance Owed: ▮ |
| Model: ▮ | Net Trade-In Allow. ▮ |
| Mileage: ▮ | Color: ▮ |
| V.I.N. | |
| Balance Owed to: ▮ | |
| Address: ▮ | |
| Account No. ▮ | |
| Info. From ▮ | Good Thru ▮ |

Customer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Customer certifies the above mileage of trade-in vehicle is accurate.

X_____  ___/___/___

ALL REBATES AND INCENTIVES

**AGREEMENT TO ARBITRATE ALL CLAIMS. READ THE FOLLOWING ARBITRATION PROVISION CAREFULLY, IT LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION, OR TO PURSUE A CLASS ACTION IN COURT AND IN ARBITRATION.**

The parties to this agreement agree to arbitrate all claims, disputes, or controversies, including all statutory claims and any state or federal claims ("claims"), that may arise out of or relating to this agreement and the sale or lease identified in this agreement. **By agreeing to arbitrate, the parties understand and agree that they are giving up their rights to use other available resolution processes, such as a court action or administrative proceeding, to resolve their disputes.** Further, the parties understand that they may not pursue any claim, even in arbitration, on behalf of a class or to consolidate their claim with those of other persons or entities. Consumer Fraud, Used Car Lemon Law, and Truth-in-Lending claims are just three examples of the various types of statutory claims subject to arbitration under this agreement. The arbitration shall be administered by the American Arbitration Association under its Commercial Arbitration Rules, and the Consumer Related Disputes Supplementary Procedures to the extent applicable, before a single arbitrator who shall be a retired judge or an attorney. Dealership shall advance both party's filing, service, administration, arbitrator, hearing, and other fees, subject to reimbursement by decision of the arbitrator. Each party shall bear his or her own attorney, expert, and other fees and costs, except when awarded by the arbitrator under applicable law. The arbitration shall take place in New Jersey at a mutually convenient place agreed upon by the parties or selected by the arbitrator. The decision of the arbitrator shall be binding upon the parties. Any further relief sought by either party will be subject to the decision of the arbitrator. [If any part of this agreement, other than the waivers of class actions, and consolidation, is found to be unenforceable for any reason, the remaining provisions shall remain enforceable. If the waiver of class actions or consolidation is found unenforceable, this entire agreement shall be void.]  In the event that any claims are based on a lease, finance, or other agreement between the parties related to this sale or lease as well as this agreement, and if such lease, finance or other agreement contains a provision for arbitration of claims which conflicts with or is inconsistent with this arbitration provision, the terms of such other arbitration provision shall govern and control. **THIS ARBITRATION PROVISION IS GOVERNED BY THE FEDERAL ARBITRATION ACT. THIS ARBITRATION PROVISION LIMITS YOUR RIGHTS, AND WAIVES THE RIGHT TO MAINTAIN A COURT ACTION OR PURSUE A CLASS ACTION IN COURT OR IN ARBITRATION. PLEASE READ IT CAREFULLY, PRIOR TO SIGNING.**

| | X | | |
|---|---|---|---|
| | | Date | X | Customer's Signature |
| Accepted By ▆▆▆ X | | ▆ | X | |
| Date | Dealer or His Authorized Representative | Date | | Customer's Signature |

Customer agrees that this Order on the face and on the reverse side and any attachments to it includes all the terms and conditions, if a sale. Customer further agrees this Order cancels and supersedes any prior agreements and as of the date signed by Dealer or authorized agent, comprises the complete and exclusive statement of the terms of the agreement between Customer and Dealer. If Customer, prior to delivery, elects to lease the vehicle described above, Customer and Dealer agree to execute a lease contract which shall contain full disclosure of all lease information. THIS ORDER SHALL NOT BECOME BINDING UNTIL ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE. Customer by execution of this Order acknowledges that they have read the terms and conditions and have received a true copy of the order. I am 18 years of age or older and of full legal capacity to enter into this contract.

| | X | | |
|---|---|---|---|
| | | Date | X | Customer's Signature |
| Accepted By ▆▆▆ X | | ▆ | X | |
| Date | Dealer or His Authorized Representative | Date | | Customer's Signature |

nj **car** Services, Inc. 37984 (11/24)    **THIS ORDER NOT SUBJECT TO CANCELLATION — DEPOSIT NON-REFUNDABLE**

**IMPORTANT: READ THE TERMS AND CONDITIONS PAGE OF THIS ORDER BEFORE SIGNING.**

## ADDITIONAL TERMS AND CONDITIONS

1. **DEFINITIONS.** "Selling Dealer" and "Dealer" mean the authorized Dealer to whom this Order is addressed, and who shall become a party on its acceptance. "Customer" means the party executing this Order as such on the face hereof. "Manufacturer" means the Division or Corporation that manufactured the vehicle or chassis, it being understood by Customer that Dealer is in no respect the agent of Manufacturer.

2. **RELATIONSHIP OF PARTIES TO AGREEMENT.** Dealer and Customer are the sole parties to this order. Any reference to Manufacturer is for the purpose of generally explaining certain contractual relationships existing between the Dealer and Manufacturer with respect to the new motor vehicles.

3. **MANUFACTURER'S PRICE INCREASES.** The Manufacturer has reserved the right to change the price to Dealer of new motor vehicles without notice. In the event the price to Dealer of the new motor vehicle ordered by Customer is changed by Manufacturer prior to its delivery to Customer, Dealer reserves the right to change the cash delivery price to Customer. If the cash delivery price, or monthly lease payment, in the event Customer has advised Dealer of his election to lease, is increased by Dealer, Customer may, if dissatisfied with the higher figure, cancel this Order. In the event a used motor vehicle ("trade-in") has been traded as part of the consideration for the new motor vehicle, the trade-in shall be returned to Customer upon payment of a reasonable charge for storage and repairs (if any). If the trade-in has been previously sold by Dealer, the amount received for it shall be returned to Customer less a selling commission of 15% and any expense incurred in storing, insuring, conditioning or advertising said trade-in for sale.

4. **TRADE-IN AND APPRAISAL.** Where Customer wishes to trade in a used motor vehicle ("trade-in") as part of the consideration for the motor vehicle ordered, Dealer may appraise the trade-in at the time of the execution of this Order by Customer. Dealer also reserves the right to reappraise the trade-in at the time of delivery.

    The Dealer shall not alter a trade-in appraisal from the time of the initial appraisal until the time of delivery unless:

    (1) intervening factors indicate an apparent decrease in the value of the trade-in over and above ordinary wear and tear; and/or

    (2) a change occurs in the mechanical performance of the vehicle.

    If such reappraised value is lower than the original allowance as shown on the front of this Order, Customer may, if dissatisfied, cancel this Order. Such right of cancellation must be exercised prior to actual delivery to the Customer of the motor vehicle ordered and the surrender of the used motor vehicle to Dealer.

    Customer certifies that the engine block is not cracked, the vehicle has not been flooded, there is no significant vehicle defect or damage, the vehicle has not been involved in any accident, and the emission control equipment, including catalytic converter has never been altered or removed.

5. **DELIVERY OF TITLE TO DEALER.** Customer agrees to deliver to Dealer satisfactory evidence of title to any trade-in vehicle used as part of this consideration for the motor vehicle ordered at the time of delivery of such used motor vehicle to Dealer. Customer warrants any trade-in vehicle to be his property free and clear of all liens and encumbrances except as otherwise noted on this Order.

6. **NON-REFUNDABLE DEPOSIT.** Unless this Order is cancelled by Customer in accordance with Paragraph 3 and 4 above, Dealer shall have the right upon failure or refusal of Customer to accept delivery of the ordered vehicle or to comply with the terms of this Order, to retain as liquidated damages any cash deposit. In addition, where Customer has traded a used motor vehicle as part of the consideration for the vehicle ordered, Dealer shall have the right to sell such trade-in and reimburse himself out of the proceeds of such sale for the expenses specified in Paragraphs 3 and 4 above and for such other expenses and losses as Dealer may incur or suffer as a result of the Customer's failure or refusal to comply with the provisions of this Order.

7. **DESIGN CHANGES BY THE MANUFACTURER.** The Manufacturer has reserved the right to change the design of any new motor vehicle, chassis, accessories or parts of new vehicles at any time without notice and without obligation to make the same or any similar change upon any motor vehicle, chassis, accessories or parts of vehicles previously purchased by or shipped to Dealer or being manufactured or sold in accordance with the Dealer's orders. In the event of any such change by the Manufacturer, Dealer shall have no obligation to Customer to make this same or any similar change in any motor vehicle, chassis, accessories or parts of the vehicle covered by this Order either before or after delivery to Customer.

8. **DELAYS IN DELIVERY.** Dealer shall not be liable for failure to deliver or for any delay in delivering the motor vehicle covered by this Order where such failure or delay is due, in whole or in part, to any cause beyond the control or without the fault or negligence of Dealer.

9. **PAYMENT OF SALES AND USE TAXES.** The price for the motor vehicle specified on the face of this Order includes reimbursement for certain Federal Excise taxes but does not include sales taxes and use taxes (Federal, State or Local) or other taxes, unless expressly stated. Customer agrees to pay, all applicable sales, use or occupational taxes. In the event Dealer fails to collect or miscalculates an applicable tax, Customer agrees to pay any additional amount due upon notification by Dealer.

10. **EXECUTION OF OTHER DOCUMENTS.** The Customer, before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment in accordance with Customer's election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order.

11. **PAYMENT OF BALANCE DUE AND ACCEPTANCE BY CUSTOMER.** The Customer agrees to advise Dealer of his election to purchase for cash, purchase and finance or to lease the vehicle covered by this Order and to pay the balance due on the terms specified and to accept delivery of the ordered vehicle within 48 hours after notification that the vehicle is ready for delivery. In the event Customer fails to take delivery of the vehicle, Customer's deposit may be retained by Dealer as liquidated damages for Dealer's expense and efforts in the matter. In addition, Dealer may dispose of or sell ordered vehicle as Dealer deems reasonable.

12. **SALES OF DEMONSTRATORS AND USED VEHICLES ONLY:** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provision in the contract of sale.

13. **PROHIBITION ON EXPORTING NEW VEHICLES:** The Customer agrees that the new vehicle to be purchased or leased will be used only in, and will not be exported from, the USA within one year of delivery of the vehicle to Customer. Customer accepts full responsibility, for any violation of this provision, and shall be liable for all costs and any charge backs, other costs or economic sanctions imposed on Dealer by Dealer's Manufacturer such as product withholding, directly or indirectly. This provision applies to the use and export of vehicle from any place and to any recipient, with or without the knowledge of Customer. Customer consents to the jurisdiction of the Superior Court of NJ in the event that Dealer litigates to enforce this provision.

14. **ASSIGNMENT OF ORDER PROHIBITED:** Customer and Dealer agree that this Order cannot be assigned to any third party, without the written consent of both Customer and Dealer.

15. **TITLE AND REGISTRATION FEES:** These are fees charged by the State of New Jersey for the title, and registration for your vehicle, any additional paperwork necessary to process your title and registration, and where applicable, for transferring the title of your trade-in. These fees may be estimated. In the event the actual fees charged by the State are different, Dealer will refund any overcharge to the Customer in the ordinary course of business. In the event of an undercharge, Customer agrees to pay any underestimate to Dealer.

16. **DOCUMENTARY FEE:** Is a fee charged by the dealer in an amount that covers costs and reflects the value of the benefit provided by the service. In some cases, the fee includes some services that may be optional or may be performed by the Customer.

17. **VEHICLE HISTORY REPORT:** If this is a used vehicle, Dealer may have provided Customer with a vehicle history Report obtained from a commercial service such as CarFax. Dealer makes no representations or warranties as to the accuracy of any information contained in any vehicle history report provided to Customer, and is not responsible for any errors or omissions therein.

18. **GOVERNING LAW.** This Agreement shall be construed under and in accordance with the laws of the State of New Jersey without regard to conflict of law principles.

# EXHIBIT 2



☐ MEDICAL ALERT

ENCODED DATA: BIRTH, REVISION,
EXPIRATION & TRANSACTION
DATES; DL/ID CARD #; SEX; NAME;
ADDRESS; ISSUING STATE &
INVENTORY CONTROL #;
COMPLIANCY INDICATOR;
DURATION INDICATOR



 <<<<<<<<<<<<<<<

<<<<<<<MI<4

MALLON<<ANDREW<PAUL<<<<<<<<<<<<

# EXHIBIT A

David C. Ricci, Esq., NJ Attorney ID No. 037622011
Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, NJ 07078
973-218-2627 / fax: (973) 206-6955
Email: dricci@NJConsumerLawyer.com

Michael F. Niznik, Esq. – NJ Attorney ID 084942013
Law Office of Michael F. Niznik
1500 Walnut Street, Suite 900
Philadelphia, PA  19102
267-589-0601/ fax: 215-839-1223
Email: Michael@NiznikLaw.com
*Attorneys for Plaintiff and others similarly situated*

| | |
|---|---|
| ANDREW MALLON, on behalf of himself and others similarly situated,<br>Plaintiff,<br><br>vs.<br><br>DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON; TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE; JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON<br>Defendants. | SUPERIOR COURT OF NEW JERSEY MORRIS COUNTY - LAW DIVISION:<br><br>CIVIL ACTION<br><br>DOCKET NO.  MRS-L-000097-26<br><br>**SUMMONS** |

From The State of New Jersey to the Defendant(s) Named Below:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney

Page 1 of 2

whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

Dated: 1/14/26                                        _s/ Michelle Smith_____
                                                      CLERK OF THE SUPERIOR COURT

Name and Address of Defendant(s) to Be Served:

DALESSIO AUTO GROUP INC.
d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON
650 Myrtle Ave #100, Boonton, NJ 07005

TILTON AUTOMOTIVE, L.L.C.
d/b/a SCHUMACHER CHEVROLET OF DENVILLE
281 US-46, Denville, NJ 07834

JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON
145 Inwood Ave. Montclair, NJ 07043

David C. Ricci, Esq., NJ Attorney ID No. 037622011
Law Office of David C. Ricci, LLC
51 JFK Parkway, First Floor West
Short Hills, NJ 07078
973-218-2627 / fax: (973) 206-6955
Email: dricci@NJConsumerLawyer.com

Michael F. Niznik, Esq. – NJ Attorney ID 084942013
Law Office of Michael F. Niznik
1500 Walnut Street, Suite 900
Philadelphia, PA  19102
267-589-0601/ fax: 215-839-1223
Email: Michael@NiznikLaw.com
*Attorneys for Plaintiff and others similarly situated*

| | |
|---|---|
| ANDREW MALLON, on behalf of himself and others similarly situated,<br>Plaintiff,<br><br>vs.<br><br>DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON; TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE; JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON<br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>MORRIS COUNTY - LAW DIVISION:<br><br>CIVIL ACTION<br><br>DOCKET NO.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

## PRELIMINARY STATEMENT

1.  In this putative class action, Plaintiff, on behalf of himself and others similarly situated, brings putative class claims against Defendants, DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON ("SCHUMACHER BOONTON"); TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE ("SCHUMACHER DENVILLE"); both motor vehicle dealers, and their registered principal JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON, for charging fees for documentary services without itemizing each specific documentary service performed and the price for each specific documentary service performed.

2.  Plaintiff, on behalf of himself and others similarly situated, alleges that the aforementioned conduct violates the Automotive Sales Practices Regulations ("ASP Regulations"). N.J.A.C. 13:45A-26B.1 to 26.B4; the Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-1, *et seq.;* and the Truth in Consumer Contract, Warranty and Notice Act ("TCCWNA"), N.J.S.A. 56:12-14 to -18.

3.  Plaintiff also brings individual claims related to Defendants' delay in providing title and registration for the vehicle.

## PARTIES

4.  Plaintiff resides in Detroit, Michigan.

5.  Defendant DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON ("SCHUMACHER BOONTON") operates a motor vehicle dealership located at 650 Myrtle Ave #100, Boonton, NJ 07005.

6.  Defendant TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE ("SCHUMACHER DENVILLE") operates a motor vehicle dealership located at 281 US-46, Denville, NJ 07834.

7.  Defendant JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON ("TILTON") is the registered principal of both SCHUMACHER BOONTON and SCHUMACHER DENVILLE, and her address is 145 Inwood Ave. Montclair, NJ 07043

## VENUE

8.  Venue in this action properly lies in Morris County because the defendants' dealerships are located there, and the transaction at issue took place there.

## FACTUAL ALLEGATIONS

9.  Defendant TILTON owns all or part of SCHUMACHER BOONTON and SCHUMACHER DENVILLE.

10. Defendant TILTON is actively engaged in the management and operations of SCHUMACHER BOONTON and SCHUMACHER DENVILLE.

11. Defendant TILTON sets the policies and practices of SCHUMACHER BOONTON and SCHUMACHER DENVILLE.

12. Defendant TILTON set the policies and practices of SCHUMACHER BOONTON and SCHUMACHER DENVILLE complained of herein.

13. Defendant TILTON receives income and profits from the policies and practices of SCHUMACHER BOONTON and SCHUMACHER DENVILLE complained of herein.

14. As a partner, officer, director and/or holder of a controlling interest in SCHUMACHER BOONTON and SCHUMACHER DENVILLE, Defendant TILTON is individually responsible for the conduct of all business at the dealership and for compliance with all the requirements of the statutes and rules governing the business of buying, selling or dealing in motor vehicles. *See* Motor Vehicle Licensing Regulations at N.J.A.C. 13:21-15.7(c).

15. The practices complained of herein are the same at all dealer locations owned by TILTON.

16. The practices complained of herein are the same at SCHUMACHER BOONTON and SCHUMACHER DENVILLE.

17. Both SCHUMACHER BOONTON and SCHUMACHER DENVILLE use the same form Buyer's Order which does not include an itemization of the documentary services provided or the fee for each documentary service provided when presented to Plaintiff and others similarly situated.

18. SCHUMACHER BOONTON and SCHUMACHER DENVILLE's practice of failing to itemize the documentary fee is a standard practice at both dealerships.

19. Hereinafter Defendants SCHUMACHER BOONTON and SCHUMACHER DENVILLE, LLC and GREGORY TILTON shall be collectively referred to as "Defendants."

20. At all times relevant, SCHUMACHER BOONTON and SCHUMACHER DENVILLE regularly sell used vehicles in the ordinary course of business.

21. At all times relevant, SCHUMACHER BOONTON and SCHUMACHER DENVILLE hold themselves out to the public as motor vehicle dealers.

22. SCHUMACHER BOONTON and SCHUMACHER DENVILLE sold or offered for sale five or more used motor vehicles in all 12-month periods relevant to this matter.

23. SCHUMACHER BOONTON and SCHUMACHER DENVILLE sold at least fifty motor vehicles in the during the period of October 31, 2024 to the present where they failed to itemize each documentary service provided and/or the fee for each documentary service provided on the first sales document used to evidence the sale or lease of a motor vehicle

24. In October 2025, Plaintiff saw an online advertisement for a used 2023 BMW M440 (VIN ending in 57210) (hereinafter the "Vehicle"), offered by SCHUMACHER BOONTON.

25. Plaintiff contacted SCHUMACHER BOONTON in response to the advertisement.

26. SCHUMACHER BOONTON told Plaintiff that the vehicle was still available for sale.

27. Plaintiff informed SCHUMACHER BOONTON that he lived in Michigan and intended to register the vehicle in the state.

28. At all times, SCHUMACHER BOONTON represented that they had good and marketable title for the vehicle.

29. At all times, SCHUMACHER BOONTON represented that they would transfer title into Plaintiff's name and permanent registration and license plates for Plaintiff.

30. SCHUMACHER BOONTON sent Plaintiff the sale documents by email to complete and send back to them.

31. Among the documents that SCHUMACHER BOONTON emailed to Plaintiff was a Vehicle Buyer's Order. (hereinafter "VBO" Exhibit A).

32. On October 31, 2025, Plaintiff purchased the subject Vehicle from SCHUMACHER BOONTON for a total sale price of $46,902.54. Plaintiff traded-in a Kia Stinger and was credited $11,000.00. Plaintiff also made a $9,000 cash down payment, and also paid the balance in cash.

33. The VBO lists the following fees:

   a) Price of Unit: $44,000.00

   b) Preparation and Processing of Other Documents (specify DOC FEE): $399

   c) State Sales Tax: $2,003.94

   d) Registration/Title Fee (Estimated): $500.00

34. Plaintiff shipped the trade-in vehicle to SCHUMACHER BOONTON.

35. SCHUMACHER BOONTON shipped the Subject Vehicle to Plaintiff.

36. SCHUMACHER BOONTON issued a New Jersey 30-day non-resident temporary registration and license plate for the Subject Vehicle (collectively, the "Temp Tag"). (Exhibit B).

37. The Temp Tag expired on December 9, 2025. (Exhibit B).

38. After the Temp Tag expired, Plaintiff reached out to SCHUMACHER BOONTON to request his permanent tags.

39. SCHUMACHER BOONTON failed to provide Plaintiff with his permanent tags.

40. On December 23, 2025, Plaintiff received the Michigan title from SCHUMACHER BOONTON via U.S. mail.

41. SCHUMACHER BOONTON did not send Plaintiff the Michigan permanent registration or license plate.

42. Plaintiff was forced to travel to the Michigan Department of Motor Vehicles to obtain his registration and license plate.

43. Plaintiff was forced to pay $5.00 to the Department of Motor Vehicles to obtain his license plate.

44. Until he obtained his license plate, Plaintiff could not legally drive the Subject Vehicle or keep it on public roadways because of the expired temporary registration.

45. Plaintiff paid for auto insurance while the Subject Vehicle had an expired temporary registration.

46. The expired temporary registration put the Subject Vehicle at risk of being impounded for an expired temporary registration.

47. SCHUMACHER BOONTON's failure to provide the Subject Vehicle's title in a timely manner, or permanent registration deprived Plaintiff of his property rights in the vehicle.

48. Between the December 9, 2025 expiration of the Temp Tag and Plaintiff obtaining the license plate on December 23, 2025, Plaintiff incurred insurance costs and alternate transportation costs for a vehicle he could not use.

49. SCHUMACHER BOONTON paid less to state motor vehicle agencies to provide title, registration and license plats than it charged Plaintiff.

50. SCHUMACHER BOONTON has not refunded the excess registration and title fees to Plaintiff.

## I. Allegations Related to the Class Claims

51. Plaintiff received a Vehicle Buyer's Order ("VBO") from Defendants. (Exhibit B).

52. As set forth in the VBOs used in the transactions of Plaintiff and others similarly situated, Defendants charged a fee to provide documentary services. In Plaintiff's transaction, the fee was $399.00.

53. The VBO used in the transactions of Plaintiff and others similarly situated was the first document which Defendants utilized to evidence an order for, deposit towards, or contract for the purchase or lease of their motor vehicles.

54. The VBO used in the transactions of Plaintiff and others similarly situated did not itemize the documentary services performed by the seller or the fee for each documentary service performed.

55. Defendants charged for Documentary Fees using VBOs that did not itemize each documentary service provided or the fee for each documentary service provided in the transactions of Plaintiff and others similarly situated.

56. The VBO was the first document Defendants utilized to evidence an order for, deposit towards, or contract for the purchase or lease of a vehicle by Plaintiff and others similarly situated.

57. Defendants did not itemize the fees charged for each itemized documentary service performed as part of the $399 "DOC FEE" charged to Plaintiff and others similarly situated.

58. Plaintiff and others similarly situated are natural persons.

## CLASS ACTION ALLEGATIONS

59. This action is brought and may properly proceed as a class action, pursuant to the provisions of Rule 4:32 of the New Jersey Court Rules. Plaintiff brings this action on behalf of himself and all others similarly situated. Plaintiff initially seeks certification of a Class, initially defined as follows:

**THE CLASS:**
All natural persons who purchased or leased a vehicle from Defendants at any time on or after the day six years prior to the date this Complaint was originally filed, who were charged for a documentary fee where the VBO used in the transaction did not itemize the specific documentary service(s) provided or the fee(s) for each documentary service provided.

Specifically excluded from the Class are the owners, officers, directors, employees, affiliates, parents, subsidiaries, heirs, successors and assigns of Defendants, whether natural persons or entities. Also excluded from the class is any judge or magistrate involved in this matter.

60. The Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

61. The proposed Class consists of hundreds or thousands of customers of Defendants whereby Defendants used the same or similar VBOs which failed to itemize each documentary service provided or the fee for each documentary service provided, yet were charged an unlawful documentary service fee.

62. Plaintiff's claims are typical of the claims of the members of the Class because all such claims arise out of the same policies, practices, and conduct, and/or the same or similar documents used by the Defendants in their dealings with Plaintiff.

63. Plaintiff has no interests antagonistic to those of the Class.

64. The Class, of which Plaintiff is a member, is readily identifiable from Defendants' business records.

65. Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in the prosecution of consumer class action litigation. Proposed Class Counsel has investigated and identified potential claims in the action; has a great deal of experience in handling class actions, other complex litigation, and claims of the type asserted in this action.

66. There are questions of law and fact common to the members of the Class. These common questions include:

   a) Whether Defendants routinely use Vehicle Buyer's Orders that include a fee for Documentary Services yet do not itemize each separate documentary service performed or the price for each documentary service performed.

b) Whether Defendants' charging a "DOC FEE" and failing to itemize each separate documentary service performed or the price for each documentary service performed in its sales documents violates the ASP Regulations at N.J.A.C.13:45A-26B.3(a)(2), the CFA and/or the TCCWNA;

c) Whether Plaintiff and those similarly situated suffered an ascertainable loss as a result of Defendants' violations of the CFA or ASP Regulations;

d) Whether the use of VBOs that contain an unlawful disclosure of a fee for documentary services constitutes a violation of the CFA or the ASP Regulations;

e) Whether Plaintiff and those similarly situated are entitled to treble their ascertainable losses as a result of Defendants' violations of the CFA and ASP Regulations'

f) Whether Defendants' use of Vehicle Buyer's Orders that contain provisions contrary to the ASP Regulations constitutes a violation of the TCCWNA;

g) Whether Plaintiff and those similarly situated are aggrieved consumers entitled to relief under the TCCWNA; and

h) Whether Plaintiff and those similarly situated are entitled to statutory damages of not less than $100 for the violations of the TCCWNA on the sales documents used in their transactions.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual class members are significant, the amount is modest compared to the expense and burden of individual litigation.

68. A class action will cause an orderly and expeditious administration of the claims of the Class and will foster economies of time, effort and expense.

69. The questions of law and/or fact common to the members of the Class predominate over any questions affecting only individual members.

## CLASS CLAIMS

### FIRST COUNT
**Violations of the Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, and
the Automotive Sales Practices Regulations, N.J.A.C. 13:45A-26B.1 to -26B.4
as to the Class**

70. Plaintiff, on behalf of himself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

71. The Consumer Fraud Act ("CFA"), at N.J.S.A. 56:8-2, prohibits as an unlawful practice the "act, use or employment by any person of any commercial practice that is unconscionable

or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."

72. "Merchandise" includes goods and services, including motor vehicles. N.J.S.A. 56:8-1.

73. Plaintiff and others similarly situated are "persons" and "consumers" as defined by the CFA.

74. Defendants are sellers and subject to the CFA. N.J.S.A. 56:8-1 *et seq.*

75. Defendants are a used motor vehicle dealer as defined by the CFA at N.J.S.A. 56:8-67.

76. The transactions of Plaintiff and others similarly situated are subject to the CFA.

77. The Automotive Sales Practices Regulations N.J.A.C. 13:45A-26B.1 to -26B.4, were promulgated under the CFA pursuant to N.J.S.A. 56:8-4, and a violation of the ASP Regulations is a *per se* unlawful act under the CFA.

78. As a seller of vehicles in the State of New Jersey, Defendants are "automotive dealers" as defined by and is subject to the ASP Regulations. N.J.A.C. 13:45A-26B.1.

79. The ASP Regulations defines "Sales Document" to mean "the first document which an automotive dealer utilizes to evidence an order for, deposit towards, or contract for the purchase of a vehicle by a consumer, and includes but is not limited to, retail orders, sales invoices, sales contracts, retail installment contracts, and other documents of similar import." N.J.A.C. 13:45A-26B.1.

80. The VBO is a "sales document" as defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

81. "'Documentary service' means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale or lease of a motor vehicle." N.J.A.C. 13:45A-26B.1.

82. "'Documentary service fee' means any monies or other thing of value, which an automotive dealer accepts from a consumer in exchange for a documentary service." N.J.A.C. 13:45A-26B.1.

83. Pursuant to the ASP regulations at N.J.A.C. 13:45A-26B.3(a)(2), Defendants shall not "accept, charge or obtain from a consumer monies, ... in exchange for the performance of any documentary service without first itemizing the actual documentary service, which is being performed **and** setting forth in writing, ... on the sale document the price for each specific documentary service." [Emphasis added].

84. The Vehicle Buyer's Orders used in the transactions of Plaintiff and others similarly situated is a "sales document" as defined by the ASP Regulations at N.J.A.C. 13:45A-26B.1.

85. Defendants violated the ASP Regulations by using Vehicle Buyer's Orders that did not itemize the actual documentary services provided and the fees for each service provided while disclosing a documentary service fee that was charged to Plaintiff and others similarly situated.

86. Defendants violated the ASP Regulations and the CFA by disclosing to and charging Plaintiff and others similarly situated a "Documentary Fee" that did not include an itemization of each documentary service provided and the fee for each such service provided.

87. The amounts that Defendants charged Plaintiff and others similarly situated for "Documentary Fee" constitute an ascertainable loss.

88. Plaintiff and others similarly situated suffered ascertainable losses for the unitemized "Documentary Fee" in their transactions with Defendants.

89. Plaintiff suffered an ascertainable loss of $399.00 for the unitemized "Documentary Fee" in the transaction with Defendants.

## <u>SECOND COUNT</u>
### Violations of the Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA")
### N.J.S.A. 56:12-14 to -18
### as to the Class

90. Plaintiff on behalf of himself and others similarly situated repeats and realleges the foregoing paragraphs as if set forth herein.

91. The TCCWNA, at N.J.S.A. 56:12-15, states that "No seller, lessor, creditor, lender or bailee shall in the course of her business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed."

92. The CFA and the ASP Regulations create clearly established rights of Plaintiff or responsibilities of Defendants.

93. Buyer's Orders are "consumer contracts" or "consumer notices" that Defendants gave to Plaintiff and others similarly situated with respect to the TCCWNA.

94. Plaintiff and others similarly situated are "consumers" with respect to the TCCWNA.

95. Defendants are sellers, lessors, creditors, lenders or bailees with respect to the TCCWNA.

96. Defendants gave or displayed written contracts or consumer notices to Plaintiff and others similarly situated which included a provision or provisions that violated the clearly established rights of Plaintiff and others similarly situated as established by New Jersey or Federal law.

97. Defendants gave or displayed written contracts or consumer notices to Plaintiff and others similarly situated which included a provision or provisions that violated the clearly established responsibilities of Defendants.

98. By offering and/or displaying and/or entering into a contract or notice with Plaintiff and others similarly situated that included charges for documentary services that were contrary to the ASP Regulations and the CFA, Defendants violated TCCWNA.

99. By using VBOs in the transactions with Plaintiff and others similarly situated that disclosed a documentary fee that was prohibited by Defendants' failure to itemize each documentary service provided and the fee for each such service provided, Defendants violated TCCWNA.

100. Plaintiff and others similarly situated are aggrieved consumers because they suffered economic harm and/or other harm by being charged fees that are prohibited by the ASP Regulations and the CFA.

101. Plaintiff and others similarly situated are entitled to a statutory civil penalty of not less than $100.00 for each contract or notice in violation of TCCWNA, plus actual damages, attorneys' fees, and costs pursuant to N.J.S.A. 56:12-17.

### THIRD COUNT
### Violations of the Uniform Declaratory Judgments Law,
### N.J.S.A. 2A:16-50, *et seq.*
### as to the Class

102. Plaintiff on behalf of himself and others similarly situated repeats and realleges the foregoing paragraphs as if set forth herein.

103. The Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50, *et seq.*, provides:

> A person interested under a … written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a statute … [or] contract … may have determined any question of construction or validity arising under the instrument, statute …[or] contract … and obtain a declaration of rights, status or other legal relations thereunder. [N.J.S.A. 2A:16-53.]

104. The VBOs that Defendants use in its vehicle sales and leases is a contract or writing as contemplated by the Uniform Declaratory Judgments Law.

105. By charging for Documentary Fees without itemizing the documentary services provided and the fees for each documentary service provided, Defendants have exhibited a pattern and practice of violating the ASP Regulations and the CFA in Defendants' conduct.

106. The Court should enter a declaratory judgment that Defendants' use of the VBO violates the ASP Regulations, the CFA, and the TCCWNA.

107. The Court should enter a declaratory judgment that Defendants' charging of Documentary Fees without itemizing each documentary service performed and the price for each service constitutes an unlawful practice in violation of the ASP Regulations and the CFA.

108. The Court should enter a declaratory judgment enjoining Defendants from future violations of the aforementioned ASP Regulations, the CFA, and the TCCWNA and requiring Defendants to correct the definition of "Documentary Fee" in their form Buyer's Orders.

109. The Court should enter a declaratory judgment enjoining Defendants from future violations of the aforementioned ASP Regulations, the CFA, and the TCCWNA and requiring Defendant itemize their documentary services and fees to comply with the ASP Regulations and the CFA.

## INDIVIDUAL CLAIMS

## FOURTH COUNT

**Violations of the Consumer Fraud Act, U.C.C., the ASP Regulations, and the New Jersey Motor Vehicle Certificate of Ownership Law**

110. Plaintiff repeats and realleges all prior allegations as if set forth at length herein.

### A. Violations of the New Jersey Uniform Commercial Code – Sales and the CFA Resulting from SCHUMACHER BOONTON's Failure to Deliver Clear and Marketable Title to Plaintiff before the expiration of the Temp Tag

111. The transaction between Plaintiff and SCHUMACHER BOONTON was a transaction in goods, subject to the New Jersey Uniform Commercial Code – Sales ("UCC"), N.J.S.A. 12A:2-101, *et seq.*

112. The Subject Vehicle is a "consumer good" as defined under the UCC. N.J.S.A. 12A:9-102(a)(23).

113. Plaintiff's purchase of the Subject Vehicle was a "consumer-goods transaction" as defined under the UCC at N.J.S.A. 12A:9-102(a)(24).

114. The UCC at N.J.S.A. 12A:2-312, Warranty of title and against infringement; buyer's obligation against infringement states the following:

(1) Subject to subsection (2) there is in a contract for sale a warranty by the seller that

(a) the title conveyed shall be good, and its transfer rightful; and

Page 11 of 16

(b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge.

(2) A warranty under subsection (1) will be excluded or modified only by specific language or by circumstances which give the buyer reason to know that the person selling does not claim title in himself or that he is purporting to sell only such right or title as he or a third person may have.

**Official Comment 6.** The warranty of subsection (1) is not designated as an "implied" warranty, and hence is not subject to Section 2-316(3). Disclaimer of the warranty of title is governed instead by subsection (2), which requires either specific language or the described circumstances.

115.    SCHUMACHER BOONTON did not give Plaintiff reason to know that SCHUMACHER BOONTON did not intend to deliver title to the Subject Vehicle in a timely manner.

116.    SCHUMACHER BOONTON's failure or refusal to deliver the Subject Vehicle's title to Plaintiff in a timely manner lacks honesty in fact, good faith, and fair dealing.

117.    SCHUMACHER BOONTON's failure or refusal to deliver the Subject Vehicle's title to Plaintiff before his Temp Tag expired lacks honesty in fact, good faith, and fair dealing.

118.    SCHUMACHER BOONTON's failure or refusal to transfer title into Plaintiff's name in violation of N.J.S.A. 12A:9-312 constitutes an unconscionable commercial practice or other violation of the CFA at N.J.S.A.. 56:8-2. *See* Lemelledo v. Beneficial Mgmt. Corp. of Am., 289 N.J. Super. 489, 502 (App. Div. 1996) ("[v]iolation[s] of a statute or regulation can serve as evidence of unconscionable practices under the Consumer Fraud Act.").

119.    As a result of SCHUMACHER BOONTON's failure to deliver clear and marketable title to Plaintiff before his Temp Tags expired, Plaintiff could not drive, sell, or utilize the other property rights that come with the purchase of a "good."

120.    As a result of SCHUMACHER BOONTON's failure to deliver clear and marketable title to Plaintiff before his Temp Tag expired, Plaintiff has suffered an ascertainable loss under the CFA, including but not limited to:

a)    $5.00, the cost that Plaintiff was forced to pay to the Michigan DMV to obtain his license plate – a fee for a service that Plaintiff already paid to Defendants.

b)    The amount of the Registration/Title fee that Defendants charged to Plaintiff that exceeded the amount that SCHUMACHER BOONTON paid to state motor vehicle entities for title, registration and license.

c)    Loss of use of the vehicle during the period of time after the Temp Tag expired on December 9, 2025 and Defendants sent Plaintiff his title on December 23, 2025.

d)    $208.78, Auto insurance costs Plaintiff has paid during the period of time after the Temp Tag expired on December 9, 2025 and Defendants sent Plaintiff his title on December 23, 2025. ($16.06 per day).

e)      Plaintiff's alternate transportation costs during the period of time after the Temp Tag expired on December 9, 2025 and Defendants sent Plaintiff his title on December 23, 2025.

**D. Violations of the New Jersey Motor Vehicle Certificate of Ownership Law and the CFA Resulting From the Dealer's Failure to Deliver Clear and Marketable Title to Plaintiff**

121.    The New Jersey Motor Vehicle Certificate of Ownership Law ("MVCOL"), N.J.S.A. 39:10-1, *et seq.,* regulates the sale of new and used motor vehicles and the transfer of title of new and used motor vehicles.

122.    The MVCOL "shall be so interpreted and construed as to effectuate its general purpose to regulate and control titles to, and possession of, all motor vehicles in this state, so as to prevent the sale, purchase, disposal, possession, use or operation of stolen motor vehicles, or motor vehicles with fraudulent titles, within this state." N.J.S.A. 39:10-3.

123.    A sale of a motor vehicle contrary to the "manner and … conditions" in the MVCOL is unlawful. N.J.S.A. 39:10-5.

124.    Pursuant to the MVCOL at N.J.S.A. 39:10-9, "When a used motor vehicle is sold in this State, the seller shall...execute and deliver to the purchaser, an assignment of the certificate of ownership…"

125.    The MVCOL authorizes "rules and regulations to effectuate the purposes of this Act." N.J.S.A. 39:10-6.

126.    Pursuant to the MVCOL Regulations at N.J.A.C. 13:21-5.8(a), "Every person, … ,shall, at the time he or she transfers ownership of a vehicle, having a mileage recording instrument (odometer), indicate on the certificate of ownership, manufacturer's statement of origin or other prescribed form, the date of transfer and the mileage reading at the time of transfer as indicated by the mileage recording instrument (odometer) and shall certify the truth thereof."

127.    Pursuant to the MVCOL Regulations at N.J.A.C. 13:21-15.6(b), "no license[d dealer], nor any person on his or her behalf, shall buy, sell, or deal in any motor vehicle unaccompanied by, or in the absence of, a valid title at the time of the transaction, except as provided pursuant to N.J.S.A. 39:10-6, 39:10-9, 39:10A-15, and 39:4-56.5."

128.    Pursuant to the MVCOL Regulations at N.J.A.C. 13:21-15.10(c), "A nonresident temporary registration shall not be issued pursuant to this section if the dealer or leasing dealer does not have in his or her possession a valid manufacturer's statement of origin or title for the vehicle and, if applicable, a valid dealer reassignment certificate for the vehicle, except as provided pursuant to N.J.S.A. 39:10-9."

129.    SCHUMACHER BOONTON's failure or refusal to deliver the Subject Vehicle's title to Plaintiff lacks honesty in fact, good faith, and fair dealing.

130.    SCHUMACHER BOONTON's failure or refusal to deliver the Subject Vehicle's title to Plaintiff before his Temp Tag expired lacks honesty in fact, good faith, and fair dealing.

131.    SCHUMACHER BOONTON's failure or refusal to transfer title into Plaintiff's name in violation of MVOL constitutes an unconscionable commercial practice or other violation of the CFA at N.J.S.A.. 56:8-2. *See* Lemelledo v. Beneficial Mgmt. Corp. of Am., 289 N.J. Super. 489, 502 (App. Div. 1996) ("[v]iolation[s] of a statute or regulation can serve as evidence of unconscionable practices under the Consumer Fraud Act.").

132.    As a result of SCHUMACHER BOONTON's failure to deliver clear and marketable title to Plaintiff, he cannot drive, sell, or utilize the other property rights that come with the purchase of a "good."

133.    As a result to SCHUMACHER BOONTON's failure to deliver clear and marketable title and registration to Plaintiff in a timely manner, Plaintiff has suffered an ascertainable loss under the CFA, including but not limited to:

    a)    $5.00, the cost that Plaintiff was forced to pay to the Michigan DMV to obtain his license plate – a fee for a service that Plaintiff already paid to Defendants.

    b)    $500.00, Registration/Title fee that Defendants charged to Plaintiff for a service they did not timely provide.

    c)    Loss of use of the vehicle during the period of time after the Temp Tag expired on December 9, 2025 and Defendants sent Plaintiff his title on December 23, 2025.

    d)    $208.78, Auto insurance costs Plaintiff has paid during the period of time after the Temp Tag expired on December 9, 2025 and Defendants sent Plaintiff his title on December 23, 2025. ($16.06 per day).

    e)    Plaintiff's alternate transportation costs during the period of time after the Temp Tag expired on December 9, 2025 and Defendants sent Plaintiff his title on December 23, 2025.

**WHEREFORE,** Plaintiff, on behalf of himself and all others similarly situated, demands judgment against the Defendants as follows:

    a.    For certification of this matter as a class action pursuant to Rule 4:32-1(b)(3);

    b.    For an order appointing the named Plaintiff, Andrew Mallon, as class representative and appointing David C. Ricci, Esq. of the Law Office of David C. Ricci, LLC, and Michael F. Niznik, Esq., of the Law Office of Michael F. Niznik, as class counsel;

    c.    For a declaratory judgment that the Defendants violated the CFA, the ASP Regulations, and the TCCWNA;

    d.    For injunctive relief prohibiting Defendants from future violations of the Consumer Fraud Act, (N.J.S.A. 56:8-1 et seq.), the ASP Regulations (N.J.A.C. 13:45A-

26B.2(a)(2)), and Truth-in-Consumer Contract, Warranty and Notice Act, (N.J.S.A. 56:12-14 et seq.) as set forth herein;

e. For actual damages as outlined above;

f. For treble damages, pursuant to the Consumer Fraud Act at N.J.S.A. 56:8-19;

g. For maximum statutory civil penalties under the Truth-in-Consumer Contract, Warranty and Notice Act, pursuant to N.J.S.A. 56:12-17;

h. For reasonable attorneys' fees and costs under the Consumer Fraud Act at N.J.S.A.56:8-19, the TCCWNA at N.J.S.A. 56:12-17, and all other applicable statutes;

i. For pre-judgment and post-judgment interest; and

j. For such other and further relief as Plaintiff and all others similarly situated may be entitled or as the Court deems equitable and just.

## NOTICE TO ATTORNEY GENERAL OF ACTION

A copy of the Complaint with Demand for Trial by Jury will be served upon the New Jersey Attorney General by emailing a copy to: askconsumeraffiars@dca.lps.state.nj.us as required by N.J.S.A. 56:8-20.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, David C. Ricci, Esq., and Michael F. Niznik, Esq. are hereby designated as trial counsel for the Plaintiff in the above matter.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues subject to trial.

## CERTIFICATION

Pursuant to Rule 4:5-1, I hereby certify to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or the subject of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated. I further certify that I know of no party who should be joined in the action at this time.

Pursuant to Rule 1:38-7, I hereby certify that I have redacted all personal identifiers in this Complaint.


Dated: 1/13/26

**Law Office of Michael Niznik**
*s/ Michael F. Niznik*
Michael Niznik, Esq.
Attorneys for Plaintiff and the putative class

# EXHIBIT A

**VEHICLE BUYERS ORDER**

**Date:** 10/31/25

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| ANDREW MALLON<br>N/A<br><br>Email:<br>Phone<br>Cell: N/A | N/A<br>,<br>Email: N/A<br>Phone: N/A<br>Cell: N/A | DALESSIO CHEVROLET BUICK<br>650 Myrtle Ave<br>Boonton, NJ 07005<br><br>Salesperson: JOHN LEE<br>Deal Number: A237210 |

THIS BUYER'S ORDER IS ☐ NEW ☒ USED ☒ CAR ☐ TRUCK ☐ DEMO
FOR THE FOLLOWING ☒ PERSONAL, FAMILY OR HOUSEHOLD ☐ AGRICULTURAL ☐ BUSINESS

TO BE DELIVERED ON OR ABOUT    10/31/25

| Year | Make | Model | Type | Trim | Color | Mileage | Stock # |
|---|---|---|---|---|---|---|---|
| 2023 | BMW | M440 GRAN COUP | HATCHBACK | N/A | GRAY | 29110 | A237210 |

**VIN** WBA13AW03PFN57210

Prior to Delivery of the vehicle listed above, customer shall elect one of the following and so advise dealership:
* Cash Purchase     * Finance Purchase

IF A CREDIT SALE, REQUIRED INFORMATION CONTAINED ON A SEPARATE DISCLOSURE STATEMENT IS MADE A PART OF THIS ORDER.

**TO BE DELIVERED ON OR ABOUT**

| | |
|---|---|
| Price of Unit | 44,000.00 |
| Additional Equipment (options) | N/A |
| | N/A |
| N/A | N/A |
| | N/A |
| | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | 0.00 |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |
| N/A | N/A |

| TOTAL PRICE OF VEHICLE | 44,000.00 |
|---|---|
| Less Trade-In | 11,000.00 |
| N/A | N/A |

## TRADE IN RECORD 1

| YR. | MAKE | MODEL | TYPE |
|---|---|---|---|
| 2020 | KIA | STINGER | SEDAN |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| N/A | N/A | 67373 |

**VIN** KNAE45LC3L6074170

| TITLE NO. | PLATE NO. | EXP. DATE |
|---|---|---|
| | N/A | |

**OWNER** ANDREW MALLON    **LOAN #** N/A

**LIENHOLDER** N/A    **PHONE** N/A

**ADDRESS** undefined undefined ,undefined undefined    **SPOKE WITH**

| AMOUNT | GOOD TILL | VERIFIED BY |
|---|---|---|
| N/A | N/A | N/A |

Buyer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Buyer certifies the above mileage of trade-in vehicle is accurate.

X _____    10 / 31 / 2025
Buyer's Signature    Date

## TRADE IN RECORD 2

| YR. | MAKE | MODEL | TYPE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| COLOR | TRIM | MILEAGE |
|---|---|---|
| N/A | N/A | N/A |

**VIN** N/A

| TITLE NO. | PLATE NO. | EXP. DATE |
|---|---|---|
| N/A | N/A | |

**OWNER** N/A    **LOAN #** N/A

**LIENHOLDER** N/A    **PHONE** N/A

**ADDRESS** undefined undefined ,undefined undefined    **SPOKE WITH**

| AMOUNT | GOOD TILL | VERIFIED BY |
|---|---|---|
| N/A | N/A | N/A |

Buyer certifies that the frame on the trade-in vehicle has never sustained any damage or been repaired. All airbags are of original equipment and have never been deployed. Also, that the vehicle has never been in a flood or had the emission control system tampered with or altered. Buyer certifies the above mileage of trade-in vehicle is accurate.

X _____    10 / 31 / 2025
Buyer's Signature    Date

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

**IF A NEW VEHICLE SALE . . .**
The only warranties applying to this vehicle are those offered by the manufacturer. The selling dealer sells this vehicle "as is" and hereby disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of the selling dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, (whether by way of "strict liability," based upon the selling dealer's negligence, or otherwise), is expressly excluded and buyer hereby assumes any such risks. The manufacturer's warranty is not affected by this disclaimer of warranties by the selling dealer.

**IF USED VEHICLE SALE-CHECK APPROPRIATE BOX**
☐ This vehicle is sold "as is" and the selling dealer hereby expressly disclaims all warranties, either express or implied, including any implied warranties of merchantability and fitness for a particular purpose. Any liability of the selling dealer with respect to defects or malfunctions of this vehicle including, without limitation, those which pertain to performance or safety, whether by way of "strict liability," based upon the selling dealer's negligence, or otherwise), is expressly excluded and buyer hereby assumes any such risks. If the vehicle being purchased is less than 7 model years old, has fewer than 100,000 miles, and costs more than $3,000 you have a legal right to a limited warranty unless you have specifically agreed to waive such a warranty, in exchange for valid consideration, and carefully reviewed and signed the accompanying waiver disclosure form.

OR

☒ The only dealer warranty on this vehicle is the limited warranty which is issued with and made a part of this order form.

**ALL USED VEHICLE SALES DEALER'S OBLIGATION**
The laws of New Jersey require Motor Vehicle Dealers to make all necessary repairs, without charge, or return the full purchase price to the buyer in the event a used vehicle sold and intended to be registered in this State fails to meet State Inspection Standards for the issuance of a certificate of approval due to a defect that is not the result of the buyer's own act. The undersigned, before entering into this contract, has been informed of dealer's obligation above and agrees to have the used vehicle inspected within 14 days from the date of delivery of such vehicle.

10 / 31 / 2025    X
Date                Buyer's Signature

☐ The Buyer intends to register this Vehicle in New Jersey in the condition sold.

**WAIVER OF DEALER'S OBLIGATION (USED VEHICLE SALE)**
The undersigned, has read and understood the above Dealer's Obligation per N.J.S.A. 39:10-27 to make repairs without charge or return the full purchase price if the vehicle fails to meet State Inspection Standards for the issuance of a certificate of approval, and the undersigned further acknowledges that Dealer has disclosed the following known defects that may need to be resolved in order to obtain a certificate of approval:

_____

_____

and does hereby WAIVE AND RELEASE the DEALER'S OBLIGATION, unless the cause for the vehicle's rejection is an item which is "covered" by New Jersey's Used Car Lemon/Warranty Law (N.J.S.A. 56:8-67 et. seq.) or which was known to the Dealer and not disclosed pursuant to N.J.S.A. 39:10-29.

___/___/___    X
Date                Buyer's Signature

| DOCUMENTARY SERVICE | |
|---|---|
| Preparation and Processing of License, Registration and Title | N/A |
| Preparation and Processing of Other Documents (specify DOC FEE _____) | 399.00 |
| Preparation and Processing of Other Documents (specify N/A _____) | N/A |
| Preparation and Processing of Other Documents (specify N/A _____) | N/A |
| **TOTAL TAXABLE AMOUNT** | 33,399.00 |
| State Sales Tax | 2003.94 |
| Tire Tax | N/A |
| Luxury or Fuel Inefficient Vehicle Surcharge | N/A |
| Registration/Title Fee (Estimated) | 500.00 |
| **PRE-DELIVERY SERVICE** | |
| Dealer Preparation of the Vehicle | N/A |
| Pre-Delivery Handling and Delivery | N/A |
| Other Pre-Delivery Service (specify N/A _____) | N/A |
| Other Pre-Delivery Service (specify N/A _____) | N/A |
| Other Pre-Delivery Service (specify N/A _____) | N/A |
| **NET PAY-OFF ON TRADE-IN** | N/A |
| N/A | N/A |
| **TOTAL** | 35,902.94 |
| Deposit | N/A |
| **CASH BALANCE TO BE PAID IN ACCEPTABLE FORM OF PAYMENT TO DEALER ON DELIVERY.** | |
| CASH DOWN | 9,000.00 |
| N/A | N/A |
| N/A | N/A |
| **BALANCE ON DELIVERY** | 26,902.94 |

**DOCUMENTARY SERVICE AND PRE-DELIVERY SERVICE**
"Documentary service" means, but is not limited to, the preparation and processing of documents in connection with the transfer of license plates, registration, or title, and the preparation and processing of other documents relating to the sale of a motor vehicle. Documentary Service Fees MUST BE ITEMIZED ABOVE such that the price of each prepared document is disclosed. "Pre-delivery service" means, but is not limited to, items that are often described or labeled as dealer preparation, vehicle preparation, pre-delivery handling and delivery, or any other service of similar import. Pre-Delivery Service Fees MUST BE ITEMIZED ABOVE and do not include any services for which the dealer receives compensation from any other party.

**For your protection, request a receipt for all payments you make.**

This Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative.

If Buyer is buying this Vehicle in a credit sale transaction evidenced by a retail installment sale contract, this Agreement is binding when the retail installment contract is signed, but will not remain binding if a third party finance source does not agree to purchase the retail installment contract executed by Buyer and Dealer based on this Agreement on the terms as submitted. See paragraph 11 on page 4 of this Agreement, which shall survive the termination of this agreement for any reason.

If Buyer is buying the Vehicle for cash (this includes a Buyer arranging Buyer's own financing from a party other than dealer), this Agreement is not binding upon either Dealer or Buyer until signed by an authorized Dealer representative.

Buyer agrees that this Agreement includes all of the terms and conditions on all pages of this Agreement hereof, that this Agreement cancels and supersedes any prior agreement including oral agreements, and as of the date below comprises; together with any retail installment sale contract the complete and exclusive statement of the terms of the agreement relating to the subject matters covered by this Agreement.

☐ If this box is checked, the following disclosure applies:

IMPORTANT: THIS VEHICLE WAS RETURNED TO THE MANUFACTURER OR OTHER RESPONSIBLE PARTY BECAUSE IT DID NOT CONFORM TO THE MANUFACTURER'S OR OTHER PARTY'S WARRANTY FOR THE VEHICLE AND THE NONCONFORMITY WAS NOT CORRECTED WITHIN A REASONABLE TIME AS PROVIDED BY LAW.

Buyer, by signing this Agreement, acknowledges that Buyer has read and agrees to its terms and has received a true copy of this Agreement. I AM 18 YEARS OF AGE OR OLDER AND OF FULL LEGAL CAPACITY TO ENTER INTO THIS CONTRACT.

☒ IF THIS BOX IS CHECKED, BUYER AGREES TO IRREVOCABLY, AND UNCONDITIONALLY WAIVE, TO THE EXTENT PERMITTED BY APPLICABLE LAW, TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT AND ANY OTHER DOCUMENT RELATED HERETO. BUYER HAS THE RIGHT TO CONSULT WITH AN ATTORNEY REGARDING THE EFFECT OF THIS JURY TRIAL WAIVER.

**BUYER SIGNS X** _____ **DATE** _____ 10/31/25 _____

**CO-BUYER SIGNS X** _____ **DATE** _____ N/A _____

**MANAGER'S APPROVAL (Must Be Accepted By An Authorized Representative of the Dealer)**

**X** _____ **DATE** _____ 10/31/25 _____

**THIS ORDER NOT SUBJECT TO CANCELLATION-DEPOSIT NON-REFUNDABLE**

**IMPORTANT: READ THE TERMS AND CONDITIONS ON ALL PAGES OF THIS ORDER BEFORE SIGNING.**

The motor vehicle fees shown on the Vehicle Buyers Order for your vehicle are an approximation of the actual fees that will be charged by the New Jersey Motor Vehicle Commission to process the title and registration for your vehicle. When your title work has been completed, we will refund any excess fees that have been collected. If we have underestimated your motor vehicle fees, we will seek payment of such amount from you.

## ADDITIONAL TERMS AND CONDITIONS

1. These definitions apply to this Agreement:

   *"Agreement"* means this Buyer's Order.
   *"Buyer"* and *"you"* mean or refer to the party executing this Agreement as such.
   *"Selling Dealer" "Dealer" "us" "our"* and *"we"* mean or refer to the authorized Dealer named on page 1 of this Agreement and who becomes a party to this Agreement by accepting it.
   *"Manufacturer"* means the manufacturer of the Vehicle.
   *"Trade-in"* is the used vehicle that Buyer intends to use as part of the consideration for the purchase price of the Vehicle or otherwise is to be transferred to Dealer.
   *"Vehicle"* is the vehicle or chassis that is the subject of this Agreement.

   We are not the Manufacturer's agent. You and we are the sole parties to this Agreement. References in this Agreement to Manufacturer are for the purpose of describing certain contractual relationships between the Manufacturer and us relating to new vehicles.

2. The Manufacturer may change the design of any vehicle, chassis, accessories, or parts at any time without notice. The Manufacturer may also make the same or any similar change upon any vehicle, chassis, accessories, or parts already bought by or shipped to Dealer or being manufactured or sold in accordance with Dealer orders. If the Manufacturer makes such a change, Dealer has no obligation to Buyer to notify Buyer or make the same or any similar change in the Vehicle or its parts either before or after Dealer delivers the Vehicle to Buyer. The Manufacturer may change the price of new vehicles without notice. If the Manufacturer changes the price of the new vehicle of the series and body type of the Vehicle before Dealer delivers it to Buyer, Dealer may change the price of the Vehicle to Buyer accordingly. If Dealer changes the price of the Vehicle, Buyer may cancel this Agreement.

3. The Trade-in shall be appraised or re-appraised at the time it is delivered to Dealer. The appraised value will be the allowance for the Trade-in. If the reappraised value is lower than the amount shown in this Agreement, Buyer may cancel this Agreement. Buyer must exercise Buyer's right to cancel upon a change in the appraised value before Dealer delivers the Vehicle to Buyer and Buyer surrenders the Trade-in to Dealer. Either the Trade-in shall be returned to the Buyer in substantially the same condition, or the full agreed trade value of the Vehicle paid to the Buyer, with no subtraction of any fees or costs.

4. Buyer shall give Dealer satisfactory evidence of title to any Trade-in upon delivery to Dealer. Buyer warrants any Trade-in to be Buyer's property, free and clear of all liens and encumbrances unless otherwise noted in this Agreement, and that the Trade-in has never had a salvage or "branded" title, been reconstructed, rebuilt, flooded or had major mechanical damage that caused the reconstruction of the Trade-in. Buyer represents that the Trade-in's mileage shown in this Agreement is the actual mileage on the Trade-in. Buyer authorizes Dealer to rely on this representation in entering into this Agreement. If Buyer provides false information related to the Trade-in Buyer agrees to repurchase the Trade-in for the full allowance given to Buyer plus all costs incurred by Dealer in resolving the matter including but not limited to reconditioning costs, legal fees, court and collection costs. Buyer authorizes Dealer to sell the Trade-in without regard to whether the financing contingencies are satisfied as described below.

5. Except as permitted under **Sections 2** or **3** above, if Buyer fails or refuses to accept delivery of the Vehicle or comply with this Agreement, without limiting any other rights Dealer may have, Dealer may keep as liquidated damages any deposit made by Buyer, to the extent not prohibited by law. Dealer may also reimburse itself for any expenses and losses it incurs or suffers as a result of Buyer's failure or refusal to comply with this Agreement, including, without limitation, reasonable attorney's fees. Dealer isn't liable for failure to deliver or delay in delivering the Vehicle where such failure or delay is due, in whole or in part, to any cause beyond Dealer's control or without Dealer's fault or negligence.

6. The Vehicle price doesn't include sales taxes, use taxes or occupational taxes based on sales volume (federal, state or local) unless expressly so stated. Buyer agrees to pay, unless prohibited by law, any such taxes imposed on or that apply to the transaction reflected by this Agreement, regardless of who has primary liability for the tax.

7. If this Agreement shows a charge for credit insurance, this paragraph applies. The credit insurance provisions in any retail installment contract Buyer may sign related to this Agreement will apply. If such credit insurance is wholly or partially unavailable under the designated policy, Dealer will deduct the applicable part of the credit insurance charge shown in this Agreement and the related finance charge from the total time balance. If such credit insurance does not become effective, Dealer will notify Buyer. This Agreement and any related retail installment contract Buyer may sign shall otherwise remain fully effective, to the extent provided by applicable law.

8. Buyer agrees to sign such agreements or documents as Dealer may reasonably require to effect the terms and conditions of payment shown in this Agreement and to otherwise carry out the intent of this Agreement.

9. Payoff information shown on pages 1 and 2 of this Agreement is provided by you and/or your lienholder. Should the actual payoff(s) be less, we will refund the difference to you. If the payoff(s) is more, you agree to remit the difference to us within three business days of notification of the difference.

10. This Agreement is an agreement to buy the Vehicle. If there is a balance due, Buyer's obligation to buy and Dealer's obligation to sell the Vehicle are expressly conditioned upon Buyer obtaining financing for the balance due. If Buyer pays Dealer with a check that is dishonored or unpaid for any reason, Dealer may, in its sole discretion, declare this Agreement null and void and retake the Vehicle and/or make claims against Buyer on the check. In addition, to the extent permitted by law, Buyer will pay Dealer a $20 returned check charge to the extent permitted by law.

11. This paragraph applies if Buyer is buying the vehicle from dealer under the terms of a retail installment contract. Dealer agrees to deliver the vehicle to Buyer on the date this Agreement is signed by Dealer and Buyer. Delivery of Vehicle to Buyer by Dealer is contingent upon placement of financing. The vehicle shall be covered by the Buyer's insurance policy.

12. Buyer may arrange financing through Dealer or a finance source of Buyer's choosing. Buyer may be able to obtain more favorable financing from a third party. Buyer understands the annual percentage rate (APR) quoted by Dealer may be negotiable. If this Agreement shows that any part of the transaction is to be financed, Dealer may assist in submitting credit applications to third parties, for which Buyer grants permission. Dealer will not lend Buyer money or finance this transaction regardless of any notation to the contrary on any document. No agent, employee or manager of Dealer may change this policy.

13. In the event that any of the terms and conditions of this Agreement other than those of paragraph 11, above, are inconsistent with the terms and conditions of any retail installment sales contract between Buyer and Dealer, the terms of such retail installment sales contract shall apply. Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any provision hereof.

14. **Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

    **Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

15. You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

16. The registration/title fees listed on pages 1 and 2 of this order are an estimate of the actual fees charged to issue the title and registration for your vehicle. If the actual fees are less than the amount estimated, Dealer will refund the difference to Buyer. If the actual fees are more than the amount estimated, Buyer agrees to pay the difference.

THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# EXHIBIT B



# Civil Case Information Statement

## Case Details: MORRIS | Civil Part Docket# L-000097-26

**Case Caption:** MALLON ANDREW  VS DALESSIO AUTO GROUP  INC.

**Case Initiation Date:** 01/13/2026

**Attorney Name:** MICHAEL FRANCIS NIZNIK JR

**Firm Name:** MICHAEL F. NIZNIK

**Address:** 1500 WALNUT ST STE 900
PHILADELPHIA PA 19102

**Phone:** 2675890601

**Name of Party:** PLAINTIFF : Andrew Mallon

**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** COMPLEX COMMERCIAL

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Andrew Mallon?** NO

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
    **If yes, for what language:**


**Please check off each applicable category: Putative Class Action?** YES  **Title 59?** NO  **Consumer Fraud?** YES
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

01/13/2026
Dated

/s/ MICHAEL FRANCIS NIZNIK JR
Signed

MORRIS COUNTY SUPERIOR COURT
PO BOX 910
MORRISTOWN        NJ 07963

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (862) 397-5700
COURT HOURS  8:30 AM - 4:30 PM

DATE:    JANUARY 13, 2026
RE:     MALLON ANDREW  VS DALESSIO AUTO GROUP  INC.
DOCKET: MRS L -000097 26

THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE
JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST
DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS:  HON PATRICIA J. ODOWD

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      001
AT:  (862) 397-5700 EXT 75351.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
ATTENTION:

ATT: MICHAEL F. NIZNIK
MICHAEL F. NIZNIK
1500 WALNUT ST STE 900
PHILADELPHIA      PA 19102

ECOURTS

ANDREW MALLON, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED

Plaintiff

vs

DALESSIO AUTO GROUP INC. D/B/A SCHUMACHER CHEVROLET BUICK OF BOONTON; ET AL

Defendant

**|||||||||||||||||||||**
20260114105311

Superior Court Of New Jersey

MORRIS  Venue

Docket Number: MRS L 97 26

**Person to be served** (Name and Address):
TILTON AUTOMOTIVE, L.L.C., D/B/A SCHUMACHER CHEVROLET OF DENVILLE
281 US-46
DENVILLE  NJ  07834
**By serving:** TILTON AUTOMOTIVE, L.L.C., D/B/A SCHUMACHER CHEVROLET OF DENVILLE

**Attorney:** MICHAEL F. NIZNIK, ESQ.

**Papers Served:** LETTER, SUMMONS AND COMPLAINT, CIS, TRACK ASSIGNMENT NOTICE, CERTIFICATION, NOTICE, EXHIBITS

**Service Data:**    [X] Served Successfully    [ ] Not Served

Date/Time:    1/14/2026 12:19 PM    _____

[ ] Delivered a copy to him/her personally

[ ] Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

[X] Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc. (indicate name & official title at right)

### AFFIDAVIT OF SERVICE
(For Use by Private Service)

Cost of Service pursuant to R. 4:4-3(c)

$ _____.____

Name of Person Served and relationship/title:

DEBORA VALANZOLA

PERSON AUTHORIZED TO ACCEPT SERVICE

**Description of Person Accepting Service:**

SEX:F___ AGE:51-65_ HEIGHT: 5'4"-5'8"____ WEIGHT: OVER 200 LBS._ SKIN:WHITE_____ HAIR:BLONDE__ OTHER:_____

**Unserved:**
[ ] Defendant is unknown at the address furnished by the attorney
[ ] All reasonable inquiries suggest defendant moved to an undetermined address
[ ] No such street in municipality
[ ] Defendant is evading service
[ ] Appears vacant
[ ] No response on:    Date/Time: _____
                      Date/Time: _____
                      Date/Time: _____

Other:

**Served Data:**
Subscribed and Sworn to me this

14th day of January, 2026

Notary Signature_____

Rosemary Ramos    September 25th, 2028
Name of Notary    My Commission Expires

I, MAX ACEVEDO-PEREZ,
was at the time of service a competent adult, over the age of 18 and not having direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_____    01/14/2026
Signature of Process Server    Date

Name of Private Server: MAX ACEVEDO-PEREZ Address: 2009 Morris Avenue UNION, NJ 07083 Phone: (800) 672-1952

Salvatore A. Giampiccolo, Esq.
John N. Visconi, Esq.
Rita Portenti, Esq.
**STEVENS & LEE, PC**
669 River Drive, Suite 201
Elmwood Park, NJ 07407
Tel.: (201) 857-6767
Fax: (201) 371-7379

*Attorneys for Defendants,*
*Tilton Automotive, L.L.C. d/b/a*
*Schumacher Chevrolet of Denville and*
*Judith Schumacher-Tilton a/k/a*
*Judith A. Tilton*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANDREW MALLON, on behalf of himself and those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DALESSIO AUTO GROUP INC. d/b/a SCHUMACHER CHEVROLET BUICK OF BOONTON; TILTON AUTOMOTIVE, L.L.C. d/b/a SCHUMACHER CHEVROLET OF DENVILLE; JUDITH SCHUMACHER-TILTON a/k/a JUDITH A. TILTON, <br><br> Defendants. | Civil Action No. <br><br><br> **CERTIFICATION OF SERVICE** |

I, Salvatore A. Giampiccolo, hereby certify and declare under penalty of perjury pursuant to section 1746 of Title 28 of the United States Code:

1.    I am an attorney at law admitted to practice in this Court and am a Partner at the law firm of Stevens & Lee, P.C., attorneys for defendants, Tilton Automotive, L.L.C. d/b/a Schumacher Chevrolet of Denville ("Schumacher Denville") and Judith Schumacher-Tilton a/k/a

1

Judith A. Tilton ("Ms. Tilton")[1] (collectively referred to as "Schumacher Defendants"), in the within matter.

2.    On February 13, 2026, I served true and accurate copies of Schumacher Defendants' Notice of Removal, all supporting pleadings, and this Certification of Service upon the following, in accordance with the Federal Rules of Civil Procedure and the electronic filing rules of the United States District Court for the District of New Jersey via overnight mail to:

| David C. Ricci, Esq.<br>Law Office of David C. Ricci, LLC<br>51 JFK Parkway, First Floor West<br>Short Hills, NJ 07078<br>dricci@NJConsumerLawyer.com | Michael F. Niznik, Esq.<br>Law Office of Michael F. Niznik<br>1500 Walnut Street, Suite 900<br>Philadelphia, PA 19102<br>michael@NiznikLaw.com | Civil Division Manager<br>Superior Court of New Jersey<br>Morris County Courthouse<br>56 Washington Street<br>Morristown, NJ 07960 |

I HEREBY CERTIFY under penalty of perjury under the laws of the United States of America that all of the foregoing statements made by me are true and correct.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  February 13, 2026

By:    */s/ Salvatore A. Giampiccolo*
Salvatore A. Giampiccolo, Esq.
John Visconi, Esq.
Rita Portenti, Esq.
**STEVENS & LEE, PC**
669 River Drive, Suite 201
Elmwood Park, NJ 07407
Tel.: (201) 857-6767
Fax: (201) 371-7379

*Attorneys for Defendants, Tilton Automotive,*
*L.L.C. d/b/a Schumacher Chevrolet of*
*Denville and Judith Schumacher-Tilton*
*a/k/a Judith A. Tilton*

---

[1] Ms. Tilton, only in her capacity as the majority-owner of Schumacher Denville.